# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LISA PEREZ,

       Plaintiff,

v.                                              No. CIV-01-0545 WJ/RLP

CENTRAL REGIONAL
EDUCATIONAL COOPERATIVE, Rae Ann Ray, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon a Motion for Summary Judgment filed by Defendant Central Regional Educational Cooperative ("CREC") on December 24, 2002 **(Doc. 113)**.[1] In this employment case, Plaintiff alleges that CREC discriminated against her, failed to accommodate her, and constructively discharged her because of a serious medical condition. Plaintiff also alleges that CREC breached its contract of employment with Plaintiff. Having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken in part and not well-taken in part, as set forth below.

The Complaint states the following claims against CREC:

---

[1] On April 9, 2002, all the federal claims were dismissed, and this Court retained supplemental jurisdiction under 28 U.S.C. § 1367 (Doc. 74).

Plaintiff also alleges abusive treatment and harassment by Defendant Ray, who was a co-director at CREC and Plaintiff's immediate supervisor. Ms. Perez was employed at CREC as a receptionist from 1995 through 1999. Defendant Ray has filed a separate a motion for dismissal and summary judgment (Doc. 111) on which the Court entered a Memorandum Opinion and Order on March 4, 2003 (Doc. 144).

Claim I:	Harassment and Discrimination based on serious Medical Condition Pursuant to New Mexico Human Rights Act, N.M.Stat.Ann.§§ 28-1-1 to 28-1-1 to 28-1-7, 28-1-9 to 28-1-14 ("NMHRA" or "Human Rights Act");
Claim Two:	Failure to Accommodate Serious Medical Condition Pursuant to NMHRA;
Claim Three:	Constructive Discharge Based on Serious Medical Condition Pursuant to NMHRA;
Claims Four through Eight:    Breach of Employment Contract;
Claim Nine:   Breach of Covenant of Good Faith and Fair Dealing.[2]

## Background

Perez was employed at CREC as a receptionist from 1995 through 1999. Like the proverbial roads which lead to Rome, Plaintiff's claims eventually lead back to, and are ultimately based on, the actions of Defendant Ray. For this reason, a description of Ray's alleged conduct is helpful within the context of Plaintiff's claims against CREC. Plaintiff's account of the facts depicts Defendant Ray as an abusive supervisor, whose mean and intimidating behavior toward her subordinates caused some CREC employees to resign or to be fired as a result of her mistreatment. Plaintiff describes Ray engaging in fits of rage toward her; screaming and yelling at Plaintiff, often right in her face; verbally belittling and degrading Plaintiff; and forcing Plaintiff to endure physically demeaning activities, such as sitting in silence for several minutes, glaring into Plaintiff's eyes or demanding that Plaintiff look at her. Plaintiff also describes other conduct by Ray which allegedly affected Plaintiff's work environment, such as avoiding answering work-related questions, singling out Plaintiff to perform work details no other worker was required to do; and denying Plaintiff her comp and leave time routinely granted to other employees. Ms. Perez contends that Defendant Ray's harassment forced her to take medical leaves of absences which culminated in her constructive discharge after her third leave of absence. Plaintiff's claims

---

[2] Claims Ten and Eleven (Intentional Infliction of Emotional Distress and Prima Facie Tort) are alleged against Defendant Ray only.

2

against CREC arise from CREC's actions, or lack thereof, during the period of time she endured Ray's abuse.

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. Id. The burden of showing that no genuine issue of material fact exists is borne by the moving party. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Id. at 671. The Court draws all reasonable inferences in favor of the nonmoving party. Curtis v. Oklahoma City Public Sch. Bd. of Ed., 147 F.3d 1200, 1214 (10th Cir. 1998).

## Discussion

Plaintiff's claims against CREC fall into two categories: those brought under the New Mexico Human Rights Act (Claims One, Two and Three); and those related to breach of employment contract and the covenant of good faith and fair dealing.

The following chronology of events is undisputed. Plaintiff began employment at CREC on or about June 22, 1994. Defendant Ray was assigned as an Interim Co-Director in December 1994, which gave Ray immediate supervisory authority over Ms. Perez from that time forward. Plaintiff took her first leave of absence on September 15, 1997, returning to work about a month

later on October 6, 1997.  Plaintiff's second leave of absence occurred between October 29, 1998 until January 8, 1999, when she returned to work part-time. Ms. Perez requested medical leave a third time on September 9, 1999, requesting medical leave.  She did not return to work after that date.

In September 1999, CREC received notes from Plaintiff's treating physician, Dr. Walter Winslow, which stated that Ms. Perez was under his care for medical treatment and that she would be off work for certain periods in September and October.  Also in September, Defendant Ray wrote to Dr. Winslow on behalf of CREC, inquiring into Plaintiff's medical condition, the nature of any impairment and whether she might require an accommodation in order to return to work. Dr. Winslow did not respond to these requests.  In October, Defendant Ray wrote to Plaintiff, enclosing a medical release and requesting Plaintiff to return the release so that Defendants could obtain her medical records. Plaintiff recalled receiving a carbon copy of this request.[3]

---

[3] The availability of Plaintiff's medical records is an unsettled issue in this case, although it may not be relevant or even necessary to the pertinent inquiries.  At his deposition, Dr. Winslow recalled receiving Defendant Ray's requests, but he stated that he did not respond to the letter because he did not have Plaintiff's permission. Winslow Dep., 77:1-17. At one point, he said that he "probably" asked Plaintiff for her permission to respond, but could not remember whether she agreed to that request.  Yet, a few lines further in the deposition, Dr. Winslow stated that he did not recall asking Ms. Perez for permission, and admitted that because it "would take hours to write out" the information, he "just didn't do it," explaining that he didn't fill out "long questionnaires . . . that nobody pays for."  78-80:17-18 ("I did that deliberately. That wasn't an oversight.") Dr. Winslow felt that Defendant Ray could have requested a copy of Plaintiff's medical records once Plaintiff gave her permission, although here again, he could not recall whether he ever asked Ms. Perez for her permission for release of this information, or whether she gave it. 79:16-25.

Plaintiff remembers signing a release in Dr. Winslow's office, but did not remember Dr. Winslow responding the request for information before he retired in November 1999.  She believed that the information was furnished by Dr. Tyler Payton, Perez Dep. 143-44,  who

In December 1999, CREC notified Plaintiff that her FMLA leave had expired, and requested that Plaintiff advise whether she would be returning to work, cautioning Plaintiff that failure to respond by December 17 could be interpreted as an abandonment of her position. Later that month, CREC again advised Plaintiff that her FMLA leave had expired, and that she would be place on leave without pay effective for the pay period of December 11, 1999 to December 24, 1999.

Plaintiff was examined by Dr. Tyler W. Payton, Jr. in March 6, 2000, at Defendant Ray's request. Dr. Payton responded to the questions previously posed by Defendant Ray to Dr. Winslow by opining that he did not feel that Plaintiff could perform the tasks and duties of her present job, and that the identification of restrictions and possible accommodations were "not applicable."

Defendant then directed its requests regarding Plaintiff's intentions on returning to work to Plaintiff's counsel, Robert Maguire. Counsel did not respond to CREC's requests of May 4, 2000, May 30, 2000 or June 29, 2000. In these last two requests, CREC advised Mr. Maguire that it would recommend that Plaintiff's employment position not be renewed, but that Plaintiff would be considered for rehire on certain conditions. On June 30, 2000, counsel for Plaintiff advised CREC that Plaintiff's doctor suggested that she not return to work for at least a year. At this point, CREC considered Plaintiff as terminated for failure to return to work.

***Claims Brought under the Human Rights Act***

Plaintiff makes three claims under the Human Rights Act: (1) that Defendant failed to accommodate her mental conditions (major depression, panic disorder, post-traumatic stress

---

examined Plaintiff at Defendant Ray's request.

disorder) by affording her regular breaks during her 6 to 6 and ½ hour work days, medical leaves and part-time employment;[4] (2) that CREC discriminated against Plaintiff by harassing her and escalating her harassment against her when she returned from her medical leaves; and (3) that Defendant's harassment forced Plaintiff to quit. Although the NMHRA contains a separate provision prohibiting retaliation, §28-1-7(I)(2), that provision is inapplicable to Plaintiff's claim of retaliatory harassment. According to both the Complaint (¶¶ 22, 29) and the Pretrial Order (at 4), the alleged harassment arose from Plaintiff's request for accommodations for her mental condition and not from any opposition to an unlawful discriminatory practice, the filing of a complaint, or participation in any proceeding under the Human Rights Act, which would be protected activities relative to the statute's prohibition on retaliation. Gonzales v. New Mexico Dep't of Health, 129 N.M. 586, 593 (2000) (citing § 28-1- 7(I)(2). Thus, the Court's analysis of the retaliatory harassment claim should proceed under the NMHRA provision prohibiting discrimination based on serious medication condition, § 28-1-7(A).

*1. Discrimination and Failure to Accommodate*

Under the NMHRA, "it is an unlawful discriminatory practice for ... an employer, unless based on a bona fide occupational qualification, ... to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of

---

[4] Defendant initially focuses on an alleged failure to accommodate for the time following Plaintiff's final departure from CREC. Defendant's position for summary judgment appeared to have definite merit, given Plaintiff's statement that she never intended to return to work after that time. However, Plaintiff contends that the period during which she alleges a failure to accommodate is the time during which she was still employed by CREC -- a contention which is supported by the Third Amended Complaint (¶ 34) and the Pretrial Order (at 4); see also Response at 30 ("Plaintiff Perez has never claimed to have requested an accommodation at that time to facilitate her return to work."

. . . medical condition. . ."   Section 28-1-7(A) (1987).   In order to prevail, Plaintiff must demonstrate, by direct or indirect evidence, that CREC intentionally discriminated against her on the basis of her sex. Smith v. FDC Corp., 109 N.M. 514, 517-18 (1990); Sonntag v. Shaw, 130 N.M. 238 (2001).

In analyzing state claims brought under the Human Rights Act, the Court borrows the standard set out under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) which "allows proof of discriminatory intent absent direct proof by creating a presumption of discrimination." Smith v. FDC Corp., 109 N.M. 514, 517, 787 P.2d 433 (1990); accord, Gonzales v. New Mexico Dep't of Health, 129 N.M. 586 (2000) (adopting methodology developed in the federal courts without adopting federal law).  Although New Mexico has not formally incorporated McDonnell Douglas' shifting burden approach into its analysis of these claims, see Brillhart v. Philips Elec. N. Am. Corp., 938 F. Supp. 742 (D.N.M. 1996), nevertheless, New Mexico case law recognizes that the goal in this type of inquiry is "to demonstrate an employer's discriminatory motives." Smith, 109 N.M. at 518.

The closest federal counterpart to disability claims under the Human Rights Act is the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12213 (1994) ("ADA"). Trujillo v. N. Rio Arriba Elec. Coop., 131 N.M. 607, 611 (2002) (noting that although the New Mexico Human Rights Act uses the terms "medical condition" or "handicap" rather than the ADA term "disability," terms were viewed as interchangeable in action by employee who alleged electric cooperative terminated him due to a medical condition).  That standard, as enunciated by the Tenth Circuit, requires that in order for a plaintiff to maintain a disability discrimination claim under the ADA, a plaintiff must demonstrate that she is a disabled person within the meaning of

7

the ADA, that she is qualified, and that the employer discriminated against her because of the disability. Id. (citing White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. 1995) (in context of termination). A plaintiff sets out a prima facie case by demonstrating that he or she is a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  See White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir.1995) (quoting  42 U.S.C. § 12111(8)), cited in Pack v. Kmart Corp., 166 F.3d 1300 (10th Cir.1999).

  The relevant inquiry is the same under the ADA or the NMHRA, since the Rules and Regulations promulgated by the Human Rights Division of the New Mexico Department of Labor regarding the definition of a "qualified handicapped person with respect to employment" track the federal standard.  For purposes of the Human Rights Act, a plaintiff must, with reasonable accommodation, be able to perform the essential functions of the job.  Under the definitions established by the New Mexico Department of Labor for the Human Rights Act, a "qualified handicapped person with respect to employment" means "a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question. . . ." N.M.Dep't of Labor, Rules and Regulations, Adm. Procedures § 7.27 ("Definitions") ((9-1-98). A "physical or mental handicap" or "serious medical condition" means a "physical or mental impairment that substantially limits one or more of an individual's major life activities," § 7.21 and § 7.33; and "physical or mental impairment"  includes "emotional or mental illness," § 7.23.

  I note that it is not clear from the parties' briefs whether there is a dispute as to whether Plaintiff had a "serious medical condition" at the relevant time. See e.g., Magruder v. Runyon,

8

844 F.Supp. 696, 705 (D.Kan. 1994), aff'd, 54 F.3d 787 (10th Cir. 1995) (For purposes of ascertaining the defendant's knowledge of the plaintiff's handicap, the court look to the date the decision was made to terminate plaintiff, not the date her termination became effective). Assuming that such a condition exists, the Court moves on to the issues raised in the summary judgment motion.

The main thrust of Defendant's argument is that CREC cannot be liable for a failure to accommodate because it had no knowledge of Plaintiff's alleged serious medical condition. Trujillo, 131 N.M. at 614 ("Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the employer cannot be held to have imputed knowledge of a medical condition") (citing Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 165 (5th Cir. 1996)); Hedberg v. Indiana Bell Telephone Co., 47 F.3d 928, 931 & 932 n. 5 (7th Cir. 1995) (a court may properly grant summary judgment on an ADA claim when an employer has no knowledge of the disability at the time the decision to fire is made); if a mental limitation is not "known" to the employer, then any failure to accommodate that limitation is not discrimination within the meaning of the ADA. § 12112(b)(5)(A); see also Whitney v. Bd. of Ed. of Grand County et al, No.00-4032, 2002 WL 1316489 (10th Cir., June 18, 2002).

Defendant also seeks to strike Perez' affidavit, in which she states that prior to her first medical leave in August 1997, she notified Defendant Ray that she had been diagnosed with depression by her doctor, on the basis that it is both self-serving and inconsistent with Plaintiff's prior deposition. In particular, Defendant cites to deposition statements wherein Plaintiff told Ray that she was experiencing "a lot of anxiety and a lot of panic." While these statements (or statements of this type) alone would probably not be sufficient to afford an employer notice of

9

either a "disability" or a "serious medical condition," in this case Plaintiff's deposition contains other statements that could be imputed to afford notice of her condition.

For example, Perez stated in her deposition that she was seeking help for depression, panic and anxiety attacks in 1997, although her recall on whether she was actually diagnosed in 1997, and which physician made the diagnosis, was hazy.  Perez Dep., 37:1-15; 38:21-25; 40:14-25. She stated that in 1997 she told Defendant Ray that she was having anxiety attacks, that she was sick, and that she "needed to go and get some medical care for [her] situation." 276:15-22. Perez stated that in October 1998, she told Defendant Ray that the doctor wanted her to take some leave, and that she had a "medical condition." Perez Dep., 277: 22-25; 278:21-25. According to Plaintiff, Defendant Ray responded to Plaintiff's requests for medical leave with vicious verbal attacks. Perez Dep., 48 ("Sick people don't work late the way you've been working").  Ray reacted to Plaintiff's return from these leaves by telling other coworkers that she (Plaintiff) was "crazy," mentally unstable and "out on leave for a mental condition." Perez Dep., 221, 280-81; Blackwell Dep., 29-30, 69.  Viewing this evidence in the light most favorable to Plaintiff, it raises inferences of discriminatory conduct by CREC through one of its supervisors, based on Plaintiff medical condition.[5]

CREC's other contention is that Plaintiff was unable to perform the essential functions of her job as a matter of law.  Whether a particular function is essential is a factual inquiry. Anderson

---

[5] The record contains some evidence that with regard to some accommodations, e.g., paying for outside training, Defendant did in fact accommodate Plaintiff.  In fact, Defendant's position is that Plaintiff was the only employee who was ever compensated for attending class. On the other hand, there are factual insufficiencies and discrepancies regarding (1) whether Plaintiff's other requested accommodations were reasonable for Defendant to make and (2) if so, whether they were allowed.

v. Coors Brewing Co., 1999 WL 444925 (10th Cir.(Colo.))(to determine whether employee is qualified under ADA, court examines whether employee can perform the essential functions of the job, i.e., functions that bear more than marginal relationship to job at issue); Martin v. State of Kan. et al, 1999 WL 635916 (10th Cir.(Kan.) (evidence insufficient for jury to find that essential functions wee limited to prison guard's tower duty).  In support of this position, Defendant relies solely on Dr. Payton's report, in which he indicated that "[w]ith appropriate treatment and followup [Plaintiff] should be able to recover sufficiently to return to work at a later date to fulfill the essential functions of her job."

Plaintiff, on the other hand, presents evidence that during her tenure of employment, in between her medical leaves, she was performing the essential functions of her job at an acceptable level.  This evidence relates to the time frame during which Plaintiff requested, but allegedly did not receive, certain accommodations -- as opposed to Dr. Payton's opinion that Plaintiff could not perform the essential functions of her job *after* Plaintiff left for the last time.  Thus, the evidence presented by Plaintiff, relevant to the question of whether Plaintiff was able to perform the essential functions of her job, is sufficient at this stage to create disputes of fact regarding whether Plaintiff was able to perform the essential functions of her job.  Garcia-Montoya v. State Treasurer's Office, 130 N.M. 25, 40 (2001) (To avoid summary judgment, the plaintiff ordinarily need not introduce additional evidence of discrimination beyond evidence establishing a prima facie case and evidence of the falsity of the proffered reason for the employment action). In sum, Defendant is not entitled to summary judgment on claims of discrimination and failure to accommodate under the NMHRA.

*3. Constructive Discharge*

11

Plaintiff alleges that Defendant Ray harassment forced her to quit and constitutes a constructive discharge. The question here is whether Plaintiff's supervisor Defendant Ray made "working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." Sanchez v. Denver Public Schools, 164 F.3d 527, 534 (10th Cir.1998) (quoting Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir.1986)); Bolden v. PRC, Inc., 43 F.3d 545, 552 (10th Cir.1994) Goss v. Exxon Office Systems, Co., 747 F.2d 885, 887 (3d Cir.1984) (inquiry is whether a reasonable employee would feel forced to resign). Existing disputes of fact regarding Plaintiff's other claims of discriminatory actions and failure to accommodate do not automatically mean that she was constructively discharged. The bar which a Plaintiff must clear in constructive discharge cases is quite high: a plaintiff must show he or she had no other choice but to quit. Sanchez, 164 F.3d at 534. I find that Plaintiff has not done so in this case.

The alleged cause of Plaintiff's complaints and legal claims is Defendant Ray's conduct. Although Plaintiff was dissatisfied with the way Ray handled her level one grievance (informal conference) based on Ray's conduct sometime in August or September 1999, she did not go on to file a written grievance (level two) which would involve other supervisors higher on the CREC hierarchy. Perez Dep. 175-79. Further, when Perez left CREC in September 1999, CREC made numerous requests to Plaintiff and to her counsel to determine the nature of her medical condition and attempted to inquire into whether job accommodations, if any, were needed. On these undisputed facts, a jury would not reasonably find that Plaintiff had no other choice but to leave her job and not return. Accordingly, Plaintiff's constructive discharge claim will be dismissed with prejudice.

12

*Breach of Contract and Covenant of Good Faith and Fair Dealing*

Plaintiff's breach of contract claims are divided into three categories:

(1) that CREC failed to keep a safe, secure and nonthreatening atmosphere, in violation of § X.H of the contract;

(2) that CREC violated Plaintiff's privacy of her medical condition through Defendant Ray's actions in removing Plaintiff's personnel folder from CREC and keeping it instead of keeping it locked in the CREC office;

(3) that CREC, through Ray, retaliated against Plaintiff because of Plaintiff's use of the grievance procedure, and employed intimidation and harassment tactics against Ms. Perez to prevent her from using the grievance procedure, thereby violating the Employee Grievance Policy.[6]

Plaintiff is correct in stating that an implied contract may be found in an employer's written representations such as an employee handbook. However, this occurs only if the handbook or manual (a) controlled the employer-employee relationship, and if (b) an employee could reasonably expect the employer to conform to the manual. Garcia v. Middle Rio Grande Conservancy District et al., 121 N.M. 728 (1996) (citing Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1322 (10th Cir. 1999) (employer's personnel policies and procedures can form an implied contract).

One of Plaintiff's contentions is that CREC failed to provide Plaintiff a safe, secure and nonthreatening atmosphere in which to work. According to the employee handbook, CREC "acknowledges the need for its employees to perform their duties in a safe, secure and nonthreatening atmosphere. . . [while recognizing the possibility of assault on an employee or another person on CREC property." I agree with Defendant's position on this provision, which I

---

[6] Plaintiff has withdrawn another category under its breach of contract claims: that CREC, through Ray, prohibited and discouraged Plaintiff from taking additional training that would improve her skills on the job.

find is a recognition of the importance of a safe and secure work environment, but is not an offer or promise (implied or otherwise) of the same. While an employee might reasonably expect CREC to conform to certain terms of the handbook, it is not reasonable to expect that the provision be read to *guarantee* an employee a safe, secure and nonthreatening atmosphere such that where an employee finds the atmosphere less than safe, secure and nonthreatening, CREC can be sued under a contract theory.[7] That provision cannot be read as sufficiently explicit to give rise to such an expectation. Hartbarger v. Paxton Co., 115 N.M. 665, 672 (1993) (to create an implied contract, the offer or promise must be sufficiently explicit to give rise to reasonable expectations). Because Plaintiff cannot base a breach of contract claim based on the theory that CREC failed to provide a safe, secure and nonthreatening environment, this claim will be dismissed.

On the other hand, the language in the handbook regarding access to personnel records could reasonably give rise to an employee's expectation that his or her personnel files would not be removed from the "personnel office or the office of the Executive Director except as designated in policy."[8] It is undisputed that Defendant Ray removed Plaintiff's file from the personnel office. Plaintiff contends that Ray's actions violated her right to keep medical information confidential and that some of this information is now missing from the reconstructed file. I find that while Plaintiff may proceed on a breach of contract claim based on failure to maintain privacy of her personnel records, issues of material fact remain as to whether Ray's

---

[7] That is not to say that CREC could not be liable for such failure on either a statutory or tort basis, as Plaintiff also alleges here.

[8] That section in the handbook provides that personnel records "*shall* not be removed. . ." and that those records *shall* be open to certain individuals only "upon reasonable notice and appointment set with the Executive Director for review." Deft's Ex. D, LP 0659 (emphasis added).

14

actions in removing the file actually constitute a breach.[9] Thus, summary judgment is denied as to this breach of contract claim.

Plaintiff alleges that her employer violated the Employee Grievance Policy through Defendant Ray's actions in retaliating against Plaintiff following Plaintiff's exercise of the first level of the grievance procedure, and in employing intimidation and harassment tactics against Plaintiff in order to prevent her from using the grievance procedure. The grievance policy states that "[n]o persons shall suffer retaliation, recrimination, discrimination, harassment, or be otherwise adversely affected because of his or her use of this grievance procedure." Pltff's Ex. 25 at 32 (Deft's Ex. D at 32). CREC's theory of defense is that Plaintiff never took the grievance to level two after being unsatisfied with the resolution at level one. Nothing in the provision's language ("*use* of this grievance procedure") makes this particular claim conditional on Plaintiff's exhaustion of the grievance procedure.

At the same time, Plaintiff submits little in the way of facts to show that Defendant Ray's adverse treatment of her worsened after she resorted to filing a grievance, since Ray's conduct was allegedly in full swing during Plaintiff's entire term of employment. However, Ms. Perez stated in her deposition that after filing the grievance sometime in August or September 1999, Defendant Ray threatened to reduce her salary, and actually denied her comp time to which she was entitled. Perez Dep., 179-80. These statements create inferences of retaliatory conduct as well as issues of credibility, which should be left to a jury to determine. Bisbee v. Bey, 39 F.3d 1096, 1101 (10th Cir. 1994) (questions of credibility should be decided by the jury).

---

[9] Ray stated that she removed Plaintiff's file, and the files of several other employees as well, for "safekeeping." Ray Dep., 131.

As part of her breach of contract claim (and apparently as a safety net for the breach claims should the Court not find them viable, see Resp. at 40), Plaintiff alleges that CREC breached an implied covenant of good faith and fair dealing. The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. This concept of the duty of good faith initially developed in contract law as a way for judges to "fill gaps and qualify or limit rights and duties otherwise arising under rules of law and specific contract language." Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 438-39 (1994) (citations omitted). However, New Mexico has not recognized a cause of action in an at-will contract for breach of an implied covenant of good faith and fair dealing. Id. at 438. There is no indication or support for the proposition that Ms. Perez' employment at CREC was anything other than at-will. Therefore, Plaintiff's claim for breach of implied covenant of good faith and fair dealing will be dismissed.

**THEREFORE**,

**IT IS ORDERED** that the Motion for Summary Judgment filed by Defendant Central Regional Educational Cooperative ("CREC") **(Doc. 113)** is GRANTED IN PART and DENIED IN PART as follows:

(1)	For Plaintiff's claims brought under the New Mexico Human Rights Act:

(a) summary judgment is DENIED on Plaintiff's claims of discrimination and failure to accommodate;

(b) summary judgment is GRANTED on Plaintiff's constructive discharge claim, which claim is hereby DISMISSED WITH PREJUDICE;

(2)	For Plaintiff's claims of breach of contract:

(a) summary judgment is GRANTED on Plaintiff's breach of contract claim based on Defendant CREC's failure to provide Plaintiff a safe, secure and nonthreatening environment, which claim is hereby DISMISSED WITH PREJUDICE;

(b) summary judgment is DENIED on Plaintiff's claim that Defendant CREC, through Defendant Ray, breached its contract of employment with Plaintiff by failing to maintain privacy of her personnel file;

(c) summary judgment is DENIED on Plaintiff's claim that Defendant CREC, through Defendant Ray's conduct, retaliated against her after she filed a grievance procedure, and employed intimidation and harassment tactics against Plaintiff in order to prevent her from using the grievance procedure;

(3)   summary judgment is GRANTED on Plaintiff's claims of breach of implied covenant of good faith and fair dealing, which claim is hereby DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE